1 | BOWMAN AND BROOKE LLP
Brian Takahashi (SBN: 146505)
2 | *E-mail: Brian.Takahashi@bowmanandbrooke.com*
Richard L. Stuhlbarg (SBN: 180631)
3 | *E-mail: Richard.Stuhlbarg@bowmanandbrooke.com*
Stephen J. Kelley (SBN: 163812)
4 | *E-mail: Stephen.Kelley@bowmanandbrooke.com*
970 West 190th Street, Suite 700
5 | Torrance, California 90502
Tel No:  310/ 768-3068
6 | Fax No:  310/ 719-1019

7 | Attorneys for Defendant
BMW OF NORTH AMERICA, LLC

8

9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JERRY ZOMORODIAN, | **CASE NO.:  2:17-cv-5061 DMG (PLAx)** |
| Plaintiff, | *Assigned to Hon. Dolly M. Gee* |
| vs. | **MEMORANDUM OF CONTENTIONS OF FACT AND LAW/TRIAL BRIEF** |
| BMW OF NORTH AMERICA, LLC; IRVINE BMW and DOES 1 through 10, inclusive, | |
| Defendants. | Action Filed:    April 11, 2017 |
| | Trial:             December 11, 2018 |

TO THE HONORABLE COURT:

PLEASE TAKE NOTICE THAT Defendant BMW of North America, LLC ("BMW NA") hereby submits the attached Memorandum of Contentions of Fact and Law/Trial Brief.

DATED:  December 6, 2018                BOWMAN AND BROOKE LLP

                                                    BY:   */s/Richard L. Stuhlbarg*
                                                              Brian Takahashi
                                                              Richard L. Stuhlbarg
                                                              Stephen J. Kelley
                                                              Attorneys for Defendant
                                                              BMW OF NORTH AMERICA, LLC

# TABLE OF CONTENTS

I.   SUMMARY STATEMENT ................................................... 7

II.  REQUIRED ELEMENTS TO PROVE PLAINTIFF'S
     CLAIMS    .............................................................. 8

     A.   CIVIL CODE 1793.2(D)(2) – FAILURE TO CONFORM
          SUBSTANTIALLY IMPAIRING NONCONFORMITY
          AFTER REASONABLE NUMBER OF ATTEMPTS ...................... 8

     B.   CIVIL CODE 1793.2(B) – FAILURE TO REPAIR
          WITHIN 30 DAYS ................................................... 9

     C.   CIVIL CODE 1793.2(A)(3) – FAILURE TO PROVIDE
          LITERATURE ........................................................ 9

     D.   CIVIL CODE 1791.2 - BREACH OF EXPRESS
          WARRANTY  ........................................................ 10

     E.   SONG-BEVERLY CONSUMER WARRANTY ACT -
          BREACH OF IMPLIED WARRANTY OF
          MERCHANTABILITY ................................................ 10

III. SUMMARY OF KEY EVIDENCE IN OPPOSITION ............................. 11

     A.   Failure to Repair After A Reasonable Number of
          Repair Attempts .................................................... 11

          1.   Instrument Cluster ........................................... 12

          2.   Engine Malfunction .......................................... 12

          3.   Oil Consumption ............................................. 13

          4.   No Substantial Impairment of Use, Value, or Safety ....... 13

     B.   The Aggregate Test Does Not Apply ................................ 14

     C.   Civil Code Section 1793.2(b ....................................... 16

     D.   Implied Warranty .................................................. 20

E.    There Are No Grounds for a Civil Penalty ..........................................22

F.    No Prejudgment Interest .....................................................................23

G.    Insufficient Literature ........................................................................23

H.    Section 1791.2(a) ...............................................................................23

IV.    SUMMARY STATEMENT OF AFFIRMATIVE DEFENSES ..................23

V.    REQUIRED ELEMENTS FOR AFFIRMATIVE DEFENSES ..................24

VI.    KEY EVIDENCE IN SUPPORT OF AFFIRMATIVE DEFENSES...........25

VII.   (NOT APPLICABLE – NO THIRD PARTIES) .........................................28

VIII.  ANTICIPATED EVIDENTIARY ISSUES...............................................  28

IX.    IDENTIFICATION OF ANY ISSUES OF LAW .......................................29

X.    CONCLUSION ......................................................................................29

# TABLE OF AUTHORITIES

Page(s)

State Cases

American Suzuki Motor Corporation v. Superior Court,
  37 Cal.App.4th 129 (1995) ........................................................................ 24

Bishop v. Hyundai Motor America,
  44 Cal.App.4th 750 (1996) ........................................................................ 28

Duale v.  Mercedes-Benz USA, LLC,
  148 Cal.App.4th 718 fn. 1 (2007) ...................................................... 15, 23

Gavaldon v. DaimlerChrysler Corp.,
  32 Cal.4th 1246 (2004) [13 Cal.Rptr.3d 793, 90 P.3d 752] ................... 20, 21, 22

Gu v. BMW of North America, LLC,
  132 Cal.App.4th 195 (2005) ...................................................................... 28

Ibrahim v. Ford Motor Co.,
  214 Cal.App.3d 878 (1989) ....................................................................... 16

Jones v. Credit Auto Center, Inc.,
  37 Cal.App.4th Supp. 1 (2015) .................................................................. 20

Krieger v. Nick Alexander Imports, Inc.,
  234 Cal.App.3d 205 (1991) ....................................................................... 16

Kwan v. Mercedes-Benz of North America, Inc.,
  23 Cal.App.4th 174 (1994) ........................................................................ 28

Mega RV Corporation v. HWH Corporation,
  225 Cal.App.4th 1318 (2014) .................................................................... 15

Mexia v. Rinker Boat Co., Inc.,
  174 Cal.App.4th 1297 (2009) .................................................................... 20

Oregel v. American Isuzu Motors, Inc.,
  90 Cal.App.4th 1094 (2001) ................................................................ 11, 14

Robertson v. Fleetwood Travel Trailers of California, Inc.,
    144 Cal.App.4th 785 (2006) ........................................................... 14

State Statutes

Cal. Civ. Code § 998 ........................................................................ 23

Cal. Civ. Code § 1790 ...................................................................... 17

Cal. Civ. Code § 1790.3 ................................................................... 11

Cal. Civ. Code § 1791 ...................................................................... 17

Cal. Civ. Code § 1791.1(c) ................................................................. 7

Cal. Civ. Code § 1791.1(d) ............................................................... 20

Cal. Civ. Code § 1791.1, subd. (a) .................................................... 20

Cal. Civ. Code § 1791.2 ..................................................................... 7

Cal. Civ. Code § 1792 ................................................................. 17, 20

Cal. Civ. Code § 1793 ...................................................................... 17

Cal. Civ. Code §1793.1 ............................................................... 11, 17

Cal. Civ. Code § 1793.2 ............................................... 11, 16, 17, 18

Cal. Civ. Code § 1793.2(A)(3) ........................................................... 7

Cal. Civ. Code §1793.2(B) ....................... 7, 16, 17, 18, 19, 24, 27

Cal. Civ. Code § 1793.2(b)(1)(B) ..................................................... 18

Cal. Civ. Code § 1793.2(b)(3) ........................................................... 18

Cal. Civ. Code § 1793.2(c) ............................................................... 17

Cal. Civ. Code § 1793.2(d) ....................................................... 18, 19, 20

Cal. Civ. Code § 1793.2(D)(2) ........................... 2, 7, 11, 18, 22

Cal. Civ. Code § 1793.22 .................................................................. 11

Cal. Civ. Code § 1793.22 .................................... 15, 16, 18, 19

Cal. Civ. Code § 1793.22(b)(3) ......................................................... 19

Cal. Civ. Code § 1793.3 to 1793.5 ................................................... 17

Cal. Civ. Code § 1794 ...................................................................... 11

Cal. Civ. Code § 1794 through 1794.4 .............................................................. 17, 21

Cal. Civ. Code § 1794(b) ................................................................................ 20, 21

Cal. Civ. Code § 1794(b)(1).................................................................................... 21

Cal. Civ. Code § 1794(c)........................................................................................ 22

Cal. Civ. Code § 1795.5 .............................................................................7, 11, 20

Cal. Civ. Code § 1795.5(c)........................................................................... 20, 24

Cal. Civ. Code § 1795.6 ......................................................................................... 11

Cal. Civ. Code § 3534 ............................................................................................ 19

Commercial Code Section 2602(1).......................................................................... 21

Commercial Code Section 2608(2).......................................................................... 21

Commercial Code Section 2714(2).......................................................................... 21

Cal. U. Com. Code, §§ 2711–2715 ........................................................................ 21

Cal. U. Com. Code, §§ 2711–2715 ................................................................... 20, 21

Other Authorities

CACI 3205.............................................................................................................. 19

Senate Bill 272 ...................................................................................................... 16

## I.   **SUMMARY STATEMENT**

This case is a straightforward Song-Beverly Consumer Warranty Act action that involves a "used" 2016 BMW 750XI VIN WBA7F2C55GG415037 "Subject Vehicle") that was leased by plaintiff Jerry Zomorodian ("Plaintiff") from Irvine BMW on June 25, 2016.   Plaintiff bears the burden under the Song-Beverly Consumer Warranty Act of proving that the subject vehicle had a nonconformity that substantially impaired the use, value, or safety to a reasonable person, and which was not repaired after a reasonable number of repair visits.

On April 11, 2017, plaintiff filed this action against BMW NA alleging: (1) Civil Code 1793.2(d)(2) (failure to repair within reasonable number of attempts), (2) Civil Code 1793.2(b) (failure to repair within 30 days), (3) Civil Code 1793.2(A)(3) (failure to provide literature to dealer), (4) Civil Code 1791.2 (breach of express warranty), and (5) Civil Code 1791.1(c) (breach of implied warranty of merchantability).  This case was then removed to federal court.

BMW NA denies Plaintiff's allegations.  Never did BMW NA breach the express warranty.   Every request for diagnosis and repair under warranty was handled promptly and professionally by non-party Irvine BMW.  They had direct access to repair materials that helped them work on the Subject Vehicle.  No alleged nonconformity was presented an unreasonable number of repair attempts, and no alleged nonconformity ever substantially impaired use, value or safety. Some of plaintiff's concerns were not defects, and, at least one alleged concern was caused by unreasonable or unauthorized use.

For the implied warranty, Civil Code Section 1791.1(c) is inapplicable as the Subject Vehicle was leased "used."  To the extent plaintiff might claim Civil Code Section 1795.5 might apply, the implied warranty for used goods runs three months at most, and nothing happened during that time frame that rendered the Subject Vehicle unfit for its ordinary purpose of providing transportation.  To the extent any breach of implied warranty is established, plaintiff never revoked

acceptance timely, therefore, the remedy for breach of implied warranty is diminution in value, at best. Finally, there is no basis for a civil penalty as BMW NA's BBB Auto Line arbitration program is state certified and BMW NA evaluated Plaintiff's repurchase requests in good faith before determining the Subject Vehicle did not qualify. For goodwill, it offered to replace the car.

## II.   REQUIRED ELEMENTS TO PROVE PLAINTIFF'S CLAIMS

### A.   CIVIL CODE 1793.2(D)(2) – FAILURE TO CONFORM SUBSTANTIALLY IMPAIRING NONCONFORMITY AFTER REASONABLE NUMBER OF ATTEMPTS

1. Plaintiff leased a vehicle (*i.e.* the Subject Vehicle) from a seller.

2. BMW NA gave Plaintiff a written warranty with the Subject Vehicle.

3. The Subject Vehicle had a nonconformity covered by the written warranty that substantially impaired its use, value, or safety to a reasonable person in Plaintiff's situation.

4. The nonconformity was not caused by unreasonable or unauthorized use.

5. Plaintiff delivered the Subject Vehicle to BMW NA or its authorized repair facilities for repair of the substantially impairing nonconformity.

6. BMW NA failed to repair the alleged nonconformity after a reasonable number of opportunities to do so.

7. BMW NA did not repurchase or replace the Subject Vehicle.

8. BMW NA's failure to repurchase or replace the Subject Vehicle was willful.

/ / /
/ / /

**B.**   **CIVIL CODE 1793.2(B) – FAILURE TO REPAIR WITHIN 30 DAYS**

1.   Plaintiff leased a vehicle (*i.e.* the Subject Vehicle) from a seller.

2.   BMW NA gave Plaintiff a written warranty with the Subject Vehicle.

3.   The Subject Vehicle had a nonconformity covered by the written warranty.

4.   The nonconformity was not caused by unreasonable or unauthorized use

5.   Plaintiff delivered the Subject Vehicle to BMW NA or its authorized repair facility for repair of the nonconformity.

6.   BMW NA's repair facility took over 30 days to repair the nonconformity

7.   The repair visit taking longer than 30 days was a substantial factor in causing plaintiff to sustain damages

8.   The amount of damages

**C.**   **CIVIL CODE 1793.2(A)(3) – FAILURE TO PROVIDE LITERATURE**

1.   Plaintiff leased a vehicle (*i.e.* the Subject Vehicle) from a seller.

2.   BMW NA gave Plaintiff a written warranty with the Subject Vehicle.

3.   The Subject Vehicle had a nonconformity covered by the written warranty.

4.   The nonconformity was not caused by unreasonable or unauthorized use

5.   Plaintiff delivered the Subject Vehicle to BMW NA or its

authorized repair facility for repair of the nonconformity.

6.     BMW NA's repair facility was unable to repair the nonconformity because it didn't have service literature

7.     The failure to service literature was a substantial factor in causing plaintiff to sustain damages

8.     The amount of damages

**D.     <u>CIVIL CODE 1791.2 - BREACH OF EXPRESS WARRANTY</u>**

1.     Plaintiff leased a vehicle (i.e. the Subject Vehicle) from a seller.

2.     BMW NA gave Plaintiff a written warranty with the Subject Vehicle.

3.     The Subject Vehicle had a nonconformity covered by the written warranty.

4.     The nonconformity was not caused by unreasonable or unauthorized use

5.     Plaintiff delivered the Subject Vehicle to BMW NA or its authorized repair facility for repair of the nonconformity.

6.     BMW NA breached the written warranty because it refused to repair the nonconformity

7.     The refusal to repair was a substantial factor in causing plaintiff to sustain damages

8.     The amount of damages

**E.     <u>SONG-BEVERLY CONSUMER WARRANTY ACT - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY</u>**

1.     Plaintiff leased a vehicle (i.e. the Subject Vehicle) from a seller.

2.     The Subject Vehicle had a defect, at time of lease, which rendered it unfit for its ordinary purpose of providing

transportation.

3.     The defect manifested in the first three months of the lease.

4.     The defect was not caused by unreasonable or unauthorized use.

5.     Plaintiff revoked acceptance of the Subject Vehicle within a reasonable time after discovering the defect.

6.     If there was no timely revocation of acceptance, Plaintiff sustained damages caused by the breach of the implied warranty of merchantability.

## III.   SUMMARY OF KEY EVIDENCE IN OPPOSITION

### A.   Failure to Repair After A Reasonable Number of Repair Attempts

Plaintiff cannot establish a Civil Code Section 1793.2(d)(2) cause of action under the Song-Beverly Act. For this claim, it is his burden to prove that: "(1) the vehicle had a nonconformity covered by the express warranty that substantially impaired the use, value or safety of the vehicle (the nonconformity element); (2) the vehicle was presented to an authorized representative of the manufacturer of the vehicle for repair (the presentation element); and (3) the manufacturer or his representative did not repair the nonconformity after a reasonable number of repair attempts (the failure to repair element)." (Oregel v. American Isuzu Motors, Inc., 90 Cal.App.4th 1094, 1101 (2001) (citing California Civil Code Section 1793.2 and Ibrahim v. Ford Motor Co., Cal.App.3d 878, 886-87 (1989)). See also Cal. Civil Code §§ 1790.3, 1791.2, 1793.1, 1793.2, 1793.22, 1794, 1795.5, and 1795.6.)

On October 22, 2015, the subject vehicle was first delivered retail. Approximately eight months later, on June 25, 2016, plaintiff leased the Subject Vehicle with 2,905 miles on the odometer. It was accompanied by a 4 year/50,000 miles New Vehicle Limited Warranty covering defects in materials or

workmanship.  The repair history shows that every concern covered by the limited warranty was not presented for an unreasonable number of attempts:

**Visit 1:** 7/6/16 (3,408 miles) – left rear wheel scratch (sent out for repair not warranty); Vehicle moves by "itself" if you let go of steering wheel (this is an intended road feel input, operating as designed); Brake Squeak (could not duplicate).

**Visit 2:** 10/18/16 (8,237 miles) – "check engine" light (xould not duplicate, vehicle operating normally); Instrument cluster shut off (no faults, working normally at this time).

**Visit 3:** 11/29/16 (10,414 miles) - instrument cluster shut off while driving (unable to duplicate, ran energy text, checked battery state of charge, no faults, 80 mile test drive, escalated to BMW NA).  This repair order was closed out on 12/9/16, but plaintiff refused to pick up the car and remained in the free rental.

**Visit 4:** 1/5/17 (10,491 miles) – instrument cluster replaced.  The vehicle was at the shop from 11/29/16 to 2/22/17 because the customer refused to pick up the car on 12/9/16.  After the instrument cluster was replaced, no more problems

**Visit 5:** 9/19/17 (19,462 miles) – "check engine" light (replaced battery). Also, perform lube oil filter and outstanding service actions.

**Visit 6:** 10/4/17 (19,466 miles) - Found coolant pump adapter harness to have rodent damage (verified, replaced adapter harness).  Not warranty.

**1. Instrument Cluster**

On 10/18/16, 11/29/16, and 1/5/17 complained that the instrument cluster intermittently went blank.  Irvine BMW could not duplicate the concern despite an 80 mile test drive.  Ultimately the instrument cluster was replaced.  Never again has the instrument cluster gone blank.  Plaintiff refused to drive the car while the instrument cluster was on back order and received a free loaner.

**2. Engine Malfunction**

There have been no repairs concerning the engine itself.  Twice, 10/18/16

and 9/19/17 complained of "check engine" light illumination.  As a general matter, the check engine light is an indicator lamp which can illuminate for a wide variety of reasons.  The illumination of the check engine light is not a nonconformity in and of itself, indeed the light should illuminate if the system is working properly and one of the requisite criteria for illumination is met.  The mere fact that the check engine light has illuminated on more than one occasion does not indicate the same underlying cause has recurred.  The "check engine light" is a federally mandated requirement. Manufacturers are required by the federal government to cause a "check engine light" to illuminate on the dash for a variety of causes even if unrelated to the "engine."

On October 18, 2016, plaintiff made his first complaint about a "check engine" light.  The dealer could not duplicate.  HKFM tailgate, EPS, and HUD faults were found, but none of these will cause a "check engine light" to illuminate.  The vehicle drove normally.

On September 17, 2017, plaintiff made his second and final complaint about a "check engine light."  The battery was replaced and the "check engine light" did not return after this visit.

### 3. Oil Consumption

Plaintiff's form complaint alleges oil consumption.  Compl. at ¶9.  However, oil consumption is not mentioned in Plaintiff's Memorandum of Contentions of Facts and Law (Dkt. 36, pp.7-9) so it appears to have been abandoned.  There were no repair visits for oil consumption.

### 4.   No Substantial Impairment of Use, Value, or Safety

None of the alleged nonconformities substantially impaired use, value or safety.  Use has been relatively continuous.  He received a free loaner and none of the other concerns affected performance.

On value, plaintiff leased the Subject Vehicle.

/ / /

On safety, none of plaintiff's verified warranty concerns substantially impaired safety.

## B. The Aggregate Test Does Not Apply

One issue in this case is whether plaintiff must prove that the vehicle as a whole, or, a specific nonconformity, was not repaired after a reasonable number of attempts.   In Robertson v. Fleetwood Travel Trailers of California, Inc., 144 Cal.App.4th 785, 798-799 (2006), the court, citing Oregel v. American Isuzu Motors, Inc., 90 Cal.App.4th 1094, 1103 (2001), articulated the following test:

> A plaintiff pursuing an action under the Song-Beverly Act has the burden to prove the following elements: (1) the product had a defect or nonconformity covered by the express warranty; (2) the product was presented to an authorized representative of the manufacturer for repair; and (3) the manufacturer or its representative did not repair the defect or nonconformity after a reasonable number of repair attempts ....

This language strongly suggests that liability attaches only if plaintiff can prove that a substantially impairing nonconformity, and not the vehicle as a whole, was unrepaired after a reasonable number of repair attempts.   CACI Jury Instruction 3201 supports Defendant's view.  It outlines the elements as follows:

1. That [name of plaintiff] [bought/leased] [a/an] [new motor vehicle] [from/distributed by/manufactured by] [name of defendant];

2. That [name of defendant] gave [name of plaint(f/] a written warranty that [describe alleged express warranty];

3. That the vehicle had [a] defect[s] that [was/were] covered by the warranty and that substantially impaired its use, value, or safety to a reasonable person in [name of plaintiff]'s situation;

4. [That [name of plaintiff] delivered the vehicle to name of defendant] or its authorized repair facility *for repair of the defect[s]*;] [or] [That [name of plaintiff] notified [name of defendant] in writing of the need for repair of the defect[s] because [he/she] reasonably could not deliver the vehicle to [name of defendant] or its authorized repair facility because of the nature of the defect[s];

5. That [name of defendant] or its authorized repair facility failed to repair the vehicle to match the written warranty after a reasonable number of opportunities to do so; and

/ / /

6. That [name of defendant] did not promptly replace or buy back the vehicle.

7.

(Emphasis added.)

In <u>Mega RV Corporation v. HWH Corporation</u>, 225 Cal.App.4th 1318 (2014), 1333, the court stated that "[t]he Act 'was enacted to address difficulties faced by consumers in enforcing express warranties. Consumers frequently were frustrated by the inconvenience of having to return goods to the manufacturer for repairs and by repeated unsuccessful attempts to remedy the **problem**. ... ' ... " (Emphasis added.) This language further indicates that the Act was enacted because of repeated attempts to remedy a problem.

In <u>Duale v. Mercedes-Benz USA, LLC</u>, 148 Cal.App.4th 718, 721 fn. 1 (2007), citing <u>Murillo v. Fleetwood Enterprises. Inc.</u>, Cal.4th 985, 989-990 (1998), the court wrote:

> The Song-Beverly Act" 'regulates warranty terms, imposes service and repair obligations on manufacturers, distributors, and retailers who make express warranties, requires disclose of specified information in express warranties, and broadens a buyer's remedies to include costs, attorney's fees, and civil penalties'" and" 'gives recourse to the buyer of a new automobile that suffers from the same defect repeatedly, or is out of service for cumulative repairs for an extended period.'"

(Internal citations and brackets omitted.)

Set forth in Section 1793.22, the Tanner Consumer Protection Act, are certain presumptions that may be relied upon by the buyer in connection with an express warranty claim. Subdivision (b) states:

> It shall be presumed that a reasonable number of attempts have been made to conform a new motor vehicle to the applicable express warranties if, within 18 months from delivery to the buyer or 18,000 miles on the odometer of the vehicle, whichever occurs first, one or more of the following occurs:
> (1) The same nonconformity results in a condition that is likely to cause death or serious bodily injury if the vehicle is driven and the nonconformity has been subject to repair two or more times by the manufacturer or its agents, and the buyer or lessee has at least once directly notified the manufacturer of the need for the repair of the nonconformity.

> (2) The same nonconformity has been subject to repair four or more times by the manufacturer or its agents and the buyer has at least once directly notified the manufacturer of the need for the repair of the nonconformity.
>
> (3) The vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer. ...

While Plaintiff might cite Section 1793.22 to support his position that the repairs under Section 1793.2 do not need to be to the same defect, the provision in Section 1793.22 were previously contained in Section 1793.2. At the time of the decision in <u>Krieger v. Nick Alexander Imports, Inc.</u>, 234 Cal.App.3d 205 (1991), section 1793.2, subdivision (e)(1) provided in pertinent part:

> ... "It shall be presumed that a reasonable number of attempts have been made to conform a new motor vehicle to the applicable express warranties if, within one year from delivery to the buyer or 12,000 miles on the odometer of the vehicle, whichever occurs first, either (A) the same nonconformity has been subject to repair four or more times by the manufacturer or its agents and the buyer has at least once directly notified the manufacturer of the need for the repair of the nonconformity, or (B) the vehicle is out of service by reason of repair of nonconformities by the manufacturer or its agents for a cumulative total of more than 30 calendar days since delivery of the vehicle to the buyer. ...

Id. at 213, fn. 4.

While these provisions "simply embody the Legislature's decision to declare presumptive standards of what is 'reasonable' for purposes of subdivision (d)" (see <u>Ibrahim v. Ford Motor Co.</u> (1989) 214 Cal.App.3d 878, 885-886), they show that the Act was intended to address situations of repeat repairs of the same defect and extended periods of the vehicle being out of service for repairs of any defects.

## C.   <u>Civil Code Section 1793.2(b)</u>

In 1970, Senate Bill 272 was enacted. Known as the Song Beverly Act, its provisions applied to "consumer goods." It did not have any specific sections relating to a "new motor vehicle." The structure of the original Song Beverly Act was as follows.

///

First, Civil Code Section 1790 set out its general provisions and that it would govern over the Commercial Code and Civil Code Section 1791 provided definitions.

Second, Civil Code Section 1792 laid out the rules for implied warranties.

Third, Civil Code Section 1793 established that if the manufacturer provided an express warranty, it couldn't limit the implied warranty accompanying such goods.

Fourth, Civil Code Section 1793.1 required clear language in express warranties.

Fifth, and of import to this issue, Civil Code Section 1793.2 provided rules for the handling of warranty repair requests by consumers where the manufacturer had repair facilities in state.  More particularly, Civil Code Section 1793.2(b) provided that repairs "shall be commenced within a reasonable time following receipt of the goods by the manufacturer" and that the goods "must be returned … in merchantable condition within 30 days…" (Emphasis added).  In the event the manufacturer could not return merchantable goods within 30 days, it was obligated to replace the goods or reimburse the buyer "less that amount directly attributable to use by the buyer prior to discovery of the defect."   Civil Code Section 1793.2(c).

Sixth, Civil Code Sections 1793.3 to 1793.5 provided rules for manufacturers whose repair facilities were out of state only.

Finally, Civil Code Sections 1794 through 1794.4 allowed a consumer injured by any willful violation of the Act to bring an action, recover damages, attorneys fees and possible civil penalty.

The entirety of Civil Code Section 1793.2 has been amended over time.  As it currently reads, it is part of Civil Code Section 1793 which is titled "Maintenance of Service or Repair Facilities in California; Time Limit for Repair of Goods; Return of Nonconforming Goods; Replacement or Reimbursement of

Goods."   It has been buttressed by sections requiring that authorized repair facilities be "reasonably close" to where its consumer goods are sold (Civil Code Section 1793.2(b)(1)(B)), that sufficient service literature and replacement parts be provided its authorized repair facilities (Civil Code Section 1793.2(b)(3)), and that the manufacturer or its authorized repair facilities repair the "goods" so as to "conform to the applicable warranties within 30 days" (Civil Code Section 1793.2(b)).

Importantly, for a "new motor vehicle," in contrast to "consumer goods," the repair requirement is different. Where the manufacturer or its representative "is unable to service or repair a new motor vehicle…. to conform to the applicable express warranties after a reasonable number of repair attempts," the manufacturer is obligated to promptly replace or repurchase the vehicle (Civil Code Section 1793.2(d)(2)).   When, why and how this latter provision found its way into Civil Code Section 1793.2 is discussed next.

In 1982, because of the vagaries of applying the Song Beverly Act to new motor vehicles, the Tanner Act was passed.   Its Enrolled Bill Report described how the replacement or repurchase of new motor vehicles was "rare" because there was no specific definition of what constituted a "reasonable number of repair attempts."   To remedy this issue, a statutory presumption of reasonable number of repair attempts was created at Civil Code Section 1793.22.    The Tanner Act was a compromise bill.  For a new motor vehicle, Civil Code Section 1793.2(d) created a restitution or replacement obligation if the manufacturer was "unable to service or repair a new motor vehicle…. to conform to the applicable express warranties after a reasonable number of repair attempts."

On its face, Civil Code Section 1793.2(b) prohibits a single repair attempt taking 30 days for the service or repair facility to conform.  It requires that service "shall be commenced within a reasonable time" and that the goods "shall be serviced or repaired within 30 days."   By referring to commencement, it's a

1  directive that service or repair facilities begin work promptly.  Nowhere does it

2  reference, like Civil Code Section 1793.22, multiple "times" for repairs.

3       Second, Civil Code Section 1793.2(b) does not apply to the manufacturers

4  of new motor vehicles, since there are other specific sections governing the

5  reasonable repair requirements for new motor vehicles contained within the Song-

6  Beverly Act.  In particular, Civil Code Section 1793.2(d) requires conformity

7  within a reasonable number of repair attempts.  The only days in the shop that

8  count are those "by reason of repair of nonconformities" (i.e. warranty-covered

9  defects that substantially impair use, value or safety).  (Civil Code sec.

10  1793.22(b)(3)).  Furthermore, the court must note the difference in the time

11  requirements between Civil Code Section 1793.22 versus 1793.2(b).  Rather than

12  a set time of 30 days from the moment a consumer good is provided to the

13  manufacturer, Civil Code Section 1793.22 gives the manufacturer of a new motor

14  vehicle a cumulative total of 30 days, and the manufacturer is free to rebut the

15  presumption as to what is or is not a reasonable opportunity to repair.

16       Clearly, the more specific provision relating to manufacturers of new motor

17  vehicles governs the time obligations of a motor vehicle manufacturer to repair the

18  motor vehicle.  Section 1793.22 is the applicable statute to analyze the automobile

19  manufacturer's obligations to repair.  Section 1793.2(b) is not applicable to a

20  manufacturer of new motor vehicles.  To hold otherwise would make the

21  presumption in Civil Code section 1793.22 meaningless.  One of the maxims of

22  jurisprudence, set forth in Civil Code Section 3534, states: "Particular expressions

23  qualify those which are general."  This maxim is on point.

24       Finally, the CACI 3205 Directions for Use provide:

25       The damages recoverable for unreasonable delay in repairs are
         uncertain. A violation of Civil Code section 1793.2(b) would not
26       entitle the consumer to the remedies of restitution or replacement for
         a consumer good or new motor vehicle as provided in section
27       1793.2(d). Before those remedies are available, the manufacturer is
         entitled to a reasonable number of repair opportunities. (Gavaldon v.
28       DaimlerChrysler Corp., 32 Cal.4th 1246, 1262 (2004) [13 Cal.Rptr.3d

793, 90 P.3d 752]; see Civ. Code, §§ 1793.2(d), 1793.22.) California Uniform Commercial Code remedies that are generally available under Song-Beverly permit the buyer to cancel the sale and recover the price paid, or to accept the goods and recover diminution in value. (See Civ. Code, § 1794(b); Cal. U. Com. Code, §§ 2711–2715.) It seems questionable, however, that a buyer could cancel the sale and get the purchase price back solely for delay in completing repairs, particularly if the repairs were ultimately successful.

## D.   **Implied Warranty**

Under the Song-Beverly Act, unless disclaimed, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792.  Merchantability means that the goods: (1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; and (4) Conform to the promises or affirmations of fact made on the container or label.  (Cal. Civ. Code § 1791.1, subd. (a).)  The core test of merchantability is fitness for the ordinary purpose for which such goods are used.  (See Mexia v. Rinker Boat Co., Inc., 174 Cal.App.4th 1297 (2009).

For "used" goods, Civil Code 1795.5 governs.  It has a shorter duration period.  More specifically, the implied warranty of merchantability for "used" goods under the Song-Beverly Act is limited to "[no] less than 30 days nor more than three months following the sale of used consumer goods to a retail buyer." Cal. Civ. Code § 1795.5(c).  This means that the defect must come to light within the time period set forth in § 1795.5(c).  Jones v. Credit Auto Center, Inc., 237 Cal.App.4th Supp. 1, 10  (2015).  Assuming plaintiff proves a breach of the implied warranty, his remedy is limited to diminution in value.  This is because Civil Code Section 1791.1(d) provides: "Any buyer of consumer goods injured by a breach of the implied warranty of merchantability ... has the remedies provided in Chapter 6 (commencing with 2601) and Chapter 7 (commencing with Section

2701) of Division 2 of the Commercial Code, and, in any action brought under such provisions, Section 1794 of this chapter shall apply."  Civil Code section 1794(b)(1) continues: "Where the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Sections 2711, 2712, and 2713 of the Commercial Code shall apply."

California Uniform Commercial Code Section 2711 provides that when a buyer rightfully rejects or justifiably revokes acceptance of goods, the buyer may cancel and recover specified damages ""in addition to recovering so much of the price as has been paid[.]" Rejection of goods, however, must be within a reasonable time after their delivery or tender.  It is ineffective unless the buyer seasonably notifies the seller. (Commercial Code Section 2602(1).)  Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects.  It is not effective until the buyer notifies the seller of it.  (Commercial Code Section 2608(2).)

Plaintiff's remedy for breach of implied warranty, assuming he is successful on this claim, should be limited to "the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have been if they had been as warranted, unless special circumstances show proximate damages of a different amount." (Commercial Code Section 2714(2).)  This result is supported by the California Supreme Court's decision in <u>Gavaldon v. Daimler Chrysler Corp</u>., 32 Cal.App.4th 1246 (2004), 90 P.3d 752.  Interpreting the legislative history of Song Beverly, the Court explained that the inclusion of restitution in Section 1794(b) was to clarify that such a remedy was available for a manufacturer's failure to repair a substantially impairing nonconformity after a reasonable number of repair attempts under Civil Code Section 1793.2(d)(2).  (<u>Id</u>. at pp. 761-762.)  Implicit in ///

the Court's ruling is that rescission for breach of implied warranty is only available if there has been timely revocation.

### E.   There Are No Grounds for a Civil Penalty

To obtain a penalty, Plaintiff must show that BMW NA "willfully" violated its obligations under the Song-Beverly Act. (Cal. Civ. Code § 1794(c).)  A failure to refund or replace is not willful if the manufacturer reasonably and in good faith believed the facts did not call for refund or replacement.  "This might be the case, for example, if the manufacturer reasonably believed the product did conform to the warranty, or a reasonable number of repair attempts had not been made, or the buyer desired further repair rather than replacement or refund."  Kwan v. Mercedes-Benz of North America, Inc., 23 Cal.App.4th 174, 185 (1994). In this case, the evidence will show BMW NA evaluated the repair history in good faith and made the determination on two occasions that the Subject Vehicle did not qualify.   Further, no verified warranty concern was ever presented for an unreasonable number of repair attempts.

On November 14, 2016, Plaintiff contacted BMW NA complaining that the instrument cluster would turn off and come back on.  At this time, there had only been one repair visit for the instrument cluster and no problem was duplicated. BMW NA collected the repair orders and evaluated the case in good faith declining repurchase.

On December 16, 2016, Plaintiff contacted BMW NA again.  BMW NA obtained the most recent repair order from Irvine BMW which once again showed unable to duplicate.  The next day, Irvine BMW contacted BMW NA asking if there was anything to take care of this guest.  On December 22, BMW NA reviewed the repurchase request and offered one payment for inconvenience.  In February 2017, BMW NA at the request of Irvine BMW offered to swap collateral allowing the Plaintiff to select a new vehicle of the same price or 5% more. Plaintiff declined the offer because his attorneys told him that he could get more.

**F.     No Prejudgment Interest**

Plaintiff is not entitled to pre-judgment interest even if he prevails. <u>Duale v. Mercedes-Benz USA, LLC</u>, 148 Cal.App.4th 718 (2007) (not an abuse of discretion to refuse prejudgment interest in Song Beverly action where "'the amount of damages was not certain, nor could it be made certain, until the jury determined whether the[re] was a nonconformity, whether it impaired the use, value or safety of the vehicle, and the mileage at which the nonconformity was presented for repair.") BMW NA offered to replace plaintiff's vehicle in February 2017 before this lawsuit was filed. Further, once the lawsuit was filed, BMW NA served a California Civil Code Section 998 Offer to Compromise for repurchase on May 19, 2017. Plaintiff objected to the 998 Offer and did not accept it.[1]

**G.     Insufficient Literature**

Plaintiffs claim that BWM NA failed to make available to it authorized service and repair facilities sufficient literature and replacement parts to effect repairs during the express warranty period. There is not a recognized cause of action. There is no CACI jury instruction or verdict.

**H.     Section 1791.2(a)**

This is a just a definition. There is no CACI jury instruction or verdict.

**IV.    <u>SUMMARY STATEMENT OF AFFIRMATIVE DEFENSES</u>**

BMW NA plans to pursue the following affirmative defenses:

Affirmative Defense 2: Failure to State a Cause of Action.

/ / /

---

[1] Settlement offers may be made under state offer of judgment rules. [see <u>Jones v. United Space Alliance, L.L.C.</u> 494 F. 3d (11 Cir. 2007) – state offer -of- judgment rules deemed "substantive" for *Erie* purposes. Cal. Civ. Code § 998 provides a penalty where either party fails to accept a pretrial settlement offer and fails to obtain a more favorable judgment at trial. (Weil & Brown, Fed. Prac. Guide: Civ. Prp. Before Trial (The Rutter Group 2017) ¶15150.2 *et. seq.*) The present action was removed on diversity grounds.

1  Affirmative Defense 3: Duration of Implied Warranty – Used
2  Vehicle.
3  Affirmative Defense 4: Subject Vehicle Fit for Its Intended Purpose.
4  Affirmative Defense 5: No Timely Revocation of Acceptance.
5  Affirmative Defense 6: Unreasonable or Unauthorized Use.
6  Affirmative Defense 7: Misuse, Improper Maintenance, Exclusion
7  Affirmative Defense 8: Civil Code 1793.2(b)
8  Affirmative Defense 9: Good Faith Evaluation
9  Affirmative Defense 10: Estoppel, Laches, Lack of Good Faith
10 **V.  REQUIRED ELEMENTS FOR AFFIRMATIVE DEFENSES**
11  Elements Required to Establish Defendant's Affirmative Defense No. 2 of
12 Plaintiffs' Failure to State a Cause of Action.
13  BMW NA asserts this defense based on the absence of evidence.
14  BMW NA's assertion is based on Plaintiff's failure to establish an essential
15 element of his claims against BMW NA.
16  Elements Required to Establish Defendant's Affirmative Defense No. 3 of
17 Duration of Implied Warranty.
18  The duration of the implied warranty for used goods is three months, and is
19 only intended to cover those defects that manifest or surface during that three
20 month time frame.  Cal. Civ. Code § 1795.5(c).
21  Elements Required to Establish Defendant's Affirmative Defense No. 4 of
22 Subject Vehicle Fit for Its Intended Purpose.
23  BMW NA alleges that the Subject Vehicle was fit for its ordinary purpose
24 of providing transportation at all times. American Suzuki Motor Corporation v.
25 Superior Court, 37 Cal.App.4th 129 (1995).
26  Elements Required to Establish Defendant's Affirmative Defense No. 5 of
27 Revocation of Acceptance Untimely.
28 / / /

1   BMW NA alleges that Plaintiff did not revoke acceptance within a
2  reasonable time and/or before a substantial change in the Subject Vehicle's
3  condition, therefore barring restitution as a remedy for Plaintiff's breach of implied
4  warranty claim.

5   <u>Elements Required to Establish Defendant's Affirmative Defense Nos. 6 - 7</u>
6   BMW NA asserts this defense based on evidence the warranty, owner's
7  manual, and repair history.

8   <u>Elements Required to Establish Defendant's Affirmative Defense No. 8 –</u>
9  <u>1793.2(b)</u>
10   BMW NA asserts this defense based on Plaintiff's refusal to pick up the
11  vehicle.

12   <u>Elements Required to Establish Defendant's Affirmative Defense No. 9 of</u>
13  <u>Good Faith Evaluation</u>
14   BMW NA promptly evaluated the service file and the service history and
15  denied Plaintiff's repurchase requests in good faith.

16  **VI.   KEY EVIDENCE IN SUPPORT OF AFFIRMATIVE DEFENSES**
17   <u>Affirmative Defense 2: Plaintiffs' Failure to State a Cause of Action</u>
18   1.   June 6, 2016, Lease Agreement
19   2.   BMW NA's New Vehicle Limited Warranty
20   3.   Irvine BMW's Service File
21   4.   Subject Vehicle's Warranty Vehicle Inquiry
22   5.   Customer Contact History
23   6.   Testimony of Jerry Zomorodian
24   7.   Testimony of Toshio Shintaku
25   8.   Testimony of Ronald Webber
26   9.   Testimony of Robert Davis
27   10.   Testimony of Ronald Gomez
28  BMW NA further asserts this defense is based on the absence of evidence.

Affirmative Defense 3: Duration of Implied Warranty

1.     June 6, 2016, Lease Agreement
2.     BMW NA's New Vehicle Limited Warranty
3.     Irvine BMW's Service File
4.     Subject Vehicle's Warranty Vehicle Inquiry
5.     Customer Contact History
6.     Testimony of Jerry Zomorodian
7.     Testimony of Toshio Shintaku
8.     Testimony of Ronald Webber
9.     Testimony of Robert Davis
10.     Testimony of Ronald Gomez

Affirmative Defense 4: Subject Vehicle Fit for Its Intended Purpose

1.     June 6, 2016, Lease Agreement
2.     BMW NA's New Vehicle Limited Warranty
3.     Irvine BMW's Service File
4.     Subject Vehicle's Warranty Vehicle Inquiry
5.     Customer Contact History
6.     Testimony of Jerry Zomorodian
7.     Testimony of Toshio Shintaku
8.     Testimony of Ronald Webber
9.     Testimony of Robert Davis
10.     Testimony of Ronald Gomez

Affirmative Defense 5: Revocation of Acceptance Untimely

1. June 6, 2016, Lease Agreement
2. BMW NA's New Vehicle Limited Warranty
3. Irvine BMW's Service File
4. Subject Vehicle's Warranty Vehicle Inquiry
5. Customer Contact History

1       6.  Testimony of Jerry Zomorodian

2       7.  Testimony of Toshio Shintaku

3       8.  Testimony of Ronald Webber

4       9.  Testimony of Robert Davis

5       10.Testimony of Ronald Gomez

6  BMW NA further asserts this defense is based on the absence of evidence of

7  timely revocation.

8       <u>Affirmative Defense 6-7: Unreasonable or Unauthorized Use, Misuse,</u>

9       <u>Exclusion</u>

10      1.  June 6, 2016, Lease Agreement

11      2.  BMW NA's New Vehicle Limited Warranty

12      3.  Owner's Manual

13      4.  Irvine BMW's Service File

14      5.  Subject Vehicle's Warranty Vehicle Inquiry

15      6.  Customer Contact History

16      7.  Testimony of Jerry Zomorodian

17      8.  Testimony of Toshio Shintaku

18      9.  Testimony of Ronald Webber

19      10.Testimony of Robert Davis

20      11.Testimony of Ronald Gomez

21      <u>Affirmative Defense 8: Civil Code 1793.2(b)</u>

22      1.  Irvine BMW's Service File

23      2.  Subject Vehicle's Warranty Vehicle Inquiry

24      3.  Customer Contact History

25      4.  Testimony of Jerry Zomorodian

26      5.  Testimony of Toshio Shintaku

27      6.  Testimony of Ronald Webber

28      7.  Testimony of Robert Davis

8.  Testimony of Ronald Gomez

Affirmative Defense 9: Good Faith Evaluation

1.    Service Request Details

2.    Customer Contact emails and text

3.    Service History Recap

4.    Irvine BMW's Service File

5.    California's BBB Lemon Law Summary

6.    Arbitration Certificate

7.    Testimony of Jerry Zomorodian

8.    Testimony of Toshio Shintaku

9.    Testimony of Ronald Webber

10.   Tesimony of Robert Davis

11.   Testimony of Ronald Gomez

## VII.  **NOT APPLICABLE – NO THIRD PARTIES)**

Not applicable.

## VIII. **ANTICIPATED EVIDENTIARY ISSUES**

Emotion distress damages are not recoverable under the Song-Beverly Act. Kwan v. Mercedes-Benz of North America, Inc., 23 Cal.App.4th 174, 187 (1994) (emotional distress damages for repeated efforts to get his car repaired, and the operational problems he considered unsafe, made him 'frustrat[ed] and mad,' 'sad,' 'nervous,' and 'worr[ied] about the safety for the family' were not authorized.)  See also, Bishop v. Hyundai Motor America, 44 Cal.App.4th 750, 758 (1996) and Gu v. BMW of North America, LLC, 132 Cal.App.4th 195, 206-207 (2005).

BMW NA's positions in the Motions *in Limine* (Dkt. Nos. 32-35, 38-39, 42-44, 47) is set forth in the moving papers and oppositions.  The Court has issued its Order on Motions *in Limine*.  (Dkt. No. 66.)

/ / /

/ / /

1    Plaintiff's expert Dan Calef has not been deposed and his file materials were

2    produced yesterday.  His deposition was duly noticed is now scheduled to occur

3    on December 7, 2018, so unknown issues may develop.

4    **IX.    IDENTIFICATION OF ANY ISSUES OF LAW**

5    BMW NA references Section III.

6    **X.     CONCLUSION**

7    In preparing for trial, counsel for BMW NA noticed that a Memorandum of

8    Contentions of Fact and Law/Trial Brief had inadvertently not been previously

9    submitted.  Counsel for BMW NA apologizes for this omission.

10

11   DATED:  December 6, 2018                   BOWMAN AND BROOKE LLP

12

13                                    BY:   */s/Richard L. Stuhlbarg*
                                           Brian Takahashi
14                                         Richard L. Stuhlbarg
                                           Stephen J. Kelley
15                                         Attorneys for Defendant
                                           BMW OF NORTH AMERICA, LLC
16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2018, I filed the foregoing document entitled **MEMORANDUM OF CONTENTIONS OF FACT AND LAW/TRIAL BRIEF** with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record in this action.

_/s/Richard L. Stuhlbarg_
Richard L. Stuhlbarg